IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 23, 2013 Session

## SUSAN CROSBY WILKINSON v. BRADLEY WEBB WILKINSON

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-00036307      Jerry Stokes, Judge**

_____

**No. W2012-00509-COA-R3-CV - Filed February 19, 2013**

_____

This is a post-divorce case. Appellee Wife and Appellant Husband entered into a marital dissolution agreement, which was incorporated, by reference, into the final decree of divorce. The agreement provided for transitional alimony payments, which would "self-terminate" upon the occurrence of certain conditions, including cohabitation. Husband developed a belief that Wife was cohabitating and, relying on the self-termination clause, ceased payment of spousal support without court intervention. Wife subsequently filed a petition for civil contempt, seeking a monetary judgment in the amount of alimony arrears and attorney's fees. The trial court determined that Husband was not in contempt, but awarded alimony arrears and attorney's fees in favor of Wife. Husband appeals. Affirmed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

George L. Rice, IV, Memphis, Tennessee, for the appellant, Bradley Webb Wilkinson.

Laura D. Rogers, Memphis, Tennessee, for the appellee, Susan Crosby Wilkinson.

### OPINION

Appellant Bradley Webb Wilkinson ("Dr. Wilkinson") and Appellee Susan Crosby Wilkinson ("Ms. Wilkinson") were married on June 23, 1990. Three children were born to the marriage (dates of birth: September 14, 1991, June 27, 1993, and August 21, 1997). The parties were divorced on February 27, 2008 by final decree of the Shelby County Circuit Court. The divorce decree was precipitated by approximately one year of contentious litigation between the parties. The parties were eventually able to agree on a permanent

parenting plan, which was entered by the court on February 13, 2008. The parties also entered into a Martial Dissolution Agreement ("MDA"), which was also approved by the court on February 13, 2008. The MDA was incorporated into the court's amended final decree of divorce, which was entered on March 10, 2008, to wit:

> [T]he parties have made adequate and sufficient provision by written Marital Dissolution Agreement for the equitable settlement of all property rights between them and the Marital Dissolution Agreement is hereby incorporated by reference as if copied verbatim.

In relevant part, the MDA provides:

> Husband will pay to wife as Transitional Alimony Three Thousand Dollars ($3,000.00) per month for twenty-four (24) months beginning on March 1, 2008 and continu[ing] for twenty-three (23) months. After this twenty-four (24) months, Husband shall pay One Thousand Five Hundred Dollars ($1,500.00) for the following twelve (12) months. Transitional Alimony shall be paid for a total of Thirty Six (36) months. Said payments will self-terminate upon the death of wife. Said payments will self-terminate upon the remarriage of wife. Remarriage includes both the ceremonial marriage and cohabitation with an unrelated person for a total of thirty (30) days. . . .

In addition to the foregoing provision, the MDA also states:

> Should either party incur any expense[s] or legal fees in a successful effort to enforce this marital dissolution agreement, in whole or in part, the Court **shall** award reasonable attorney's fees and suit expenses to the party seeking to enforce this agreement . . . .

(emphasis in original).

On April 4, 2011, Ms. Wilkinson filed a petition for civil contempt against Dr. Wilkinson. In relevant part, the petition avers:

> Dr. Wilkinson has willfully disobeyed the order of the Court

even though he was able to comply. Dr. Wilkinson stopped paying the court-ordered support [i.e., alimony] as of September 1, 2008. He even demanded that Ms. Wilkinson refund the support she received in May, June, July and August or he would withhold the money from his child support payments. Dr. Wilkinson stopped paying support based upon evidence captured in a private investigator's video. The video has not, however, been provided to Ms. Wilkinson despite her requests to see it. Ms. Wilkinson denied that she was living with anyone.

*      *      *

Other than what allegedly appeared in the "surveillance video" Dr. Wilkinson refuses to release, Dr. Wilkinson has provided no other reason for his contemptuous acts. It is believed that he stopped paying the support because he knew Ms. Wilkinson lacked the financial resources to enforce the Court's order.

Based upon the provision in the MDA, *supra*, Ms. Wilkinson asked not only for a finding of civil contempt, but also for a judgment on arrears and for her attorney's fees.

Although Dr. Wilkinson filed a stipulation, on June 22, 2011, stating that he was able to pay the court-ordered support, in his response to Ms. Wilkinson's petition for civil contempt, which was filed on July 1, 2011, Dr. Wilkinson states:

8. [Dr. Wilkinson] had a reasonable belief that [Ms. Wilkinson] was cohabitating with a third party, Lauren Morgan, after viewing a private investigator's report showing the two sharing a residence for a total of thirty days, learning that [Ms. Wilkinson] was renting said residence in her name, that the utilities to said residence were in Lauren Morgan's name, and learning that [Ms. Wilkinson] cancelled her cell phone service and added a line onto Lauren Morgan's cell phone plan.

9. At this time, the Court's Order self-terminated alimony.

*      *      *

11. [Dr. Wilkinson] made his last alimony payment to [Ms.

Wilkinson] in August 2008 because alimony had previously self-terminated by Court Order.

On October 17, 2011, Ms. Wilkinson filed a motion for partial summary judgment on the issue of Dr. Wilkinson's failure to pay transitional alimony, and for an award of attorney's fees. Dr. Wilkinson opposed the motion, which was heard on November 18, 2011. By Order of December 9, 2011, the trial court denied the motion for partial summary judgment.

Both parties filed trial briefs and affidavits evidencing their respective attorney's fees and costs. The petition for civil contempt was heard on December 19, 2011. By Order of February 13, 2012, the court found, in relevant part, that:

> 1. Ms. Wilkinson is entitled to receive the remaining 30 months of alimony owed in the amount of $72,000.00.
>
> 2. Dr. Wilkinson is not in willful contempt of the Court's order for failing to pay the transitional alimony.
>
> *                                   *                                   *
>
> 5. Ms. Wilkinson is entitled to attorney fees that relate to the successful pursuit of past-due alimony in the amount of $11,285.50.

Accordingly, Ms. Wilkinson was awarded a total judgment of $83,285.50. The trial court specifically reserved the issue of discretionary costs. On February 17, 2012, Ms. Wilkinson filed a motion for discretionary costs. On February 24, 2012, the trial court entered a consent order, awarding Ms. Wilkinson $1,350.05 in discretionary costs.

Dr. Wilkinson filed a timely notice of appeal. However, upon review of the appellate record, this Court determined that the order appealed was not final so as to confer jurisdiction upon this Court. Tenn. R. App. P. 3(a). Specifically, this Court determined that the trial court had failed to rule on Dr. Wilkinson's petition to modify the previous order of the court, which he had filed on October 26, 2010. Accordingly, on July 6, 2012, this Court entered a show-cause order, requiring Appellant to obtain a final order in the trial court or to show cause why the appeal should not be dismissed. In response, Dr. Wilkinson supplemented the appellate record with a consent order, filed in the trial court on July 13, 2012, which dismisses Dr. Wilkinson's petition to modify the previous order of the court. The order is now final for purposes of appeal.

-4-

Dr. Wilkinson raises three issues for review as stated in his brief:

> 1. Whether the trial court erred in awarding a money judgment on a petition for civil contempt without a finding of civil contempt.
>
> 2. Whether the trial court erred in awarding a money judgment when laches barred the claim.
>
> 3. Whether the trial court erred in awarding attorney's fees pursuant to a Martial Dissolution Agreement in an unsuccessful petition for civil contempt.

In the posture of Appellee, Ms. Wilkinson raises the following, additional issues:

> 1. Whether Ms. Wilkinson is entitled to a larger award of attorney's fees.
>
> 2. Whether the trial court abused its discretion by denying Ms. Wilkinson's motion for partial summary judgment even though: (1) Dr. Wilkinson admitted that he had not paid the alimony owed; and (2) Dr. Wilkinson had not made any request to modify his alimony prior to the date the last payment of alimony was owed.
>
> 3. Whether the trial court abused its discretion when it found that Dr. Wilkinson was not in willful contempt for failing to pay the alimony he was ordered to pay when the evidence showed that: (1) Dr. Wilkinson did not pay the alimony that was ordered; (2) Dr. Wilkinson did not have a legal basis not to pay the alimony that was owed; and (3) Dr. Wilkinson had the ability to pay the alimony that was owed.
>
> 4. Whether Ms. Wilkinson is entitled to an award of attorney's fees for this appeal.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). Furthermore, when the resolution of the issues in a case

depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See **McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***Whitaker***, 957 S.W.2d at 837; *see also **Walton v. Young***, 950 S.W.2d 956, 959 (Tenn.1997).

## I. Laches

As discussed in 5 Nancy F. MacLean & Bradley A. MacLean, Tennessee Practice: Civil Procedure Forms § 8.425 (2012):

> Laches is an equitable doctrine that bars an action where a party's unexcused or unreasonable delay is prejudicial to its adversary. Equity will not intervene when the plaintiff has delayed unreasonably in enforcing his or her rights. ***Hannewald v. Fairfield Communities, Inc.***, 651 S.W.2d 222 (Tenn. Ct. App. 1983). In order for laches to be a successful defense, the defendant must show not merely the length of time which has elapsed, but that "because of such lapse of time, the party relying on laches as a defense has been prejudiced by the delay." ***Brister v. Brubaker's Estate***, 336 S.W.2d 326, 332 ( Tenn. Ct. App. 1960). Prejudice is a required element to the defense of laches. ***Dement v. Kitts***, 777 S.W.2d 33 (Tenn. Ct. App. 1989).
>
> Note that to give rise to estoppel by delay in asserting a legal right, there must be an opportunity to speak or act and an obligation or duty to do so. [***State ex rel. Grant v. Prograis***, 979 S.W.2d 594 (Tenn. Ct. App. 1997) (long delay in claiming retroactive support on behalf of minor child did not work an estoppel).]

***Id***.

Laches is an affirmative defense under Tennessee Rule of Civil Procedure 8.03:

> In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, express assumption of risk, comparative fault (including the identity or

description of any other alleged tortfeasors), discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, statute of repose, waiver, workers' compensation immunity, and any other matter constituting an affirmative defense.

*Id*. As Ms. Wilkinson argues in her brief, it is well-settled that a failure to comply with Rule 8.03 constitutes a waiver of the affirmative defense. *See* Tenn. R. Civ. P. 12.08; *see also* ***Barker v. Heekin Can Co.***, 804 S.W.2d 442, 444 (Tenn. 1991). From our review of the record, there is no indication that Dr. Wilkinson ever raised the defense of laches in the trial court, nor did the trial court make any specific finding concerning this defense. Although the record is not completely developed on this subject, at the hearing, the trial court did inquire, *sua sponte*, as to why Ms. Wilkinson had waited so long to file her petition for contempt. Ms. Wilkinson answered that, because Dr. Wilkinson had failed to pay her the court-ordered support, she was without funds to pursue any recourse in the court. Although it would appear that Dr. Wilkinson was not prejudiced in that he had the use and control of the money, while Ms. Wilkinson did not, he argues that he spent the support money on private school tuition and other items for the children and, was prejudiced (or would be so) if he was made to pay support arrears to Ms. Wilkinson. Regardless of the parties' respective arguments, the fact remains that Dr. Wilkinson failed to raise laches as an affirmative defense as required under Tennessee Rule of Civil Procedure 8.03. Accordingly, we consider the defense waived.

## II. Contempt

As a preliminary matter, we note that the alleged contemptuous act in the case involves Dr. Wilkinson's suspension of Ms. Wilkinson's alimony payments. Throughout his brief, Dr. Wilkinson emphasizes that the alimony provision at issue provides that the alimony obligation would "self-terminate" upon cohabitation. As is relevant to this appeal, the MDA states that, "[alimony] payments will self-terminate upon . . . the remarriage of wife. Remarriage includes . . . cohabitation with an unrelated person for a total of thirty (30) days. . . ." Despite this language, the trial court found that Dr. Wilkinson was not justified in suspending alimony payments and ordered Dr. Wilkinson to pay a judgment on the arrearage. Dr. Wilkinson does not appeal the trial court's finding that he was in error in suspending the alimony payments in this case. Thus, the issue of whether a "self-termination" clause in an MDA allows an obligor spouse to terminate alimony without authorization from the court is not presented in this appeal. As such, we decline to either approve or disapprove of such practice. We caution litigants, however, that they rely on "self-terminat[ion]" clauses at their

peril.[1]

Instead of arguing that the trial court erred in concluding that Dr. Wilkinson could not suspend alimony in this case, Dr. Wilkinson argues that the trial court could not order payment of arrears in the absence of a finding that he was in civil contempt. We now turn to address that question.

Civil contempt is imposed at the insistence and for the benefit of the party who has suffered a violation of rights and the purpose of civil contempt is to coerce compliance with the court's orders. *Doe v. Bd. of Prof'l Responsibility of Sup.Ct. of Tenn.*, 104 S.W.3d 465, 473–74 (Tenn. 2003); *see also Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 510 (Tenn. 2005) (stating that a civil contempt action is generally brought to enforce private rights).[2] Civil contempt occurs when a person does not comply with a court order and an action is brought by a private party to enforce rights under the order that has been violated. Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of rights. Also, in civil contempt cases, the quantum of proof necessary to convict is a preponderance of the evidence. *Doe*, 104 S.W.3d at 474 (internal citations omitted).

---

[1] We note that contracting to allow an obligor spouse to terminate alimony based on a contingency, such as the fact-intensive cohabitation inquiry, without a court order, appears to conflict with established case law in this area. Specifically, the Tennessee Supreme Court held in *Barnes v. Barnes*, 193 S.W.3d 495 (Tenn. 2006), that an MDA providing for ongoing alimony is subject to modification only by court order. *Id.* at 498. Relying on the rule expressed in *Barnes*, the Tennessee Court of Appeals held that "alimony over which the court has continuing statutory power to modify [] loses its contractual nature when merged into a decree for divorce." *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. Ct. App. 1975). The alimony in this case is transitional alimony, *see* Tenn. Code Ann. § 36-5-121(g)(1), which by contract was subject to modification upon remarriage or cohabitation. *See also* Tenn. Code Ann. § 36-5-121(g)(2) (providing that transitional alimony is unmodifiable unless the obligee lives with a third person, in which case there is a rebuttable presumption that the obligee is no longer in need of some or all of the alimony award). Thus, it appears that the court had continuing power to modify the award and the obligation could not be "modified, restricted, or enlarged, or entirely released upon the consent of the parties" without prior court authorization. *Barnes*, 193 S.W.3d at 498.

[2] The substantive difference between civil contempt and criminal contempt is that criminal contempt is not used to enforce a private right of a party, instead, criminal contempt is used to "preserve the power and vindicate the dignity and authority of the law" as well as to preserve the court "as an organ of society." *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996); *see also Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). Another substantive difference is that in criminal contempt proceedings, "the defendant is presumed to be innocent and must be proven guilty beyond a reasonable doubt." *Doe*, 104 S.W.3d at 474 (citing *Shiflet v. State*, 400 S.W.2d 542, 543 (Tenn. 1966)).

Here, Dr. Wilkinson argues that, in the absence of a finding that he was in civil contempt, the trial court cannot enforce his obligation to pay alimony. With respect to Dr. Wilkinson, his argument is flawed. Tennessee courts have held that a finding of civil contempt is not a prerequisite to a trial court's ability to enforce its orders. *See, e.g., **Dodd v. Dodd***, No. M2011-02147-COA-R3-CV, 2012 WL 3193339, at \*4 (Tenn. Ct. App. Aug. 6, 2012) ("Father also takes issue with the money judgments the trial court awarded to Mother, which, he asserts, flow from the trial court's erroneous findings of civil contempt. As explained in the preceding section, we have concluded Father was not found to be in civil contempt. However, **that conclusion does not undermine the propriety of the money judgments awarded to Mother**.") (emphasis added).

Regardless of whether the trial court erred in failing to find Dr. Wilkinson in contempt in this case, a contempt finding is not a condition precedent to enforcement of the court's order. Tennessee Code Annotated Section 16-1-102 explicitly grants courts of this State the power to: (1) "[c]ompel obedience to its judgments, orders, and process;" and to (2) [c]ontrol its process and orders." *See also **Dodd***, 2012 WL 3193339, at \*4. Dr. Wilkinson argues that Ms. Wilkinson's petition "was only designated as a petition for civil contempt," and was "not a petition for a calculation of arrearages, a petition to have arrearages reduced to judgment, and/or a petition to enforce contractual obligations." Respectfully, we disagree. In her prayer for relief, Ms. Wilkinson clearly asks "[t]hat the amounts owed by Dr. Wilkinson be reduced to judgment and interest added as allowed by law," and for an award of her "attorney's fees and suit expenses . . . ." From the petition, we conclude that Dr. Wilkinson was well noticed of the fact that Ms. Wilkinson was seeking monetary damages in this case. Ms. Wilkinson apparently asks for a finding of contempt in order to facilitate the underlying purpose of her petition, which is to recoup support arrears. However, because the trial court has the power and discretion to enforce its orders in the way it deems best, a finding of contempt was not a mandatory requirement for the award of arrears. Here, the court chose to reduce the arrearage to a monetary judgment without going so far as to hold Dr. Wilkinson in contempt. From the record, we cannot conclude that the court's decision in this regard constitutes an abuse of discretion. However, the mere fact that the court relieved Dr. Wilkinson of a contempt finding will not, *ipso facto*, relieve him of the judgment made by the court for the purpose of enforcing its order. Thus, the court did not err in granting a judgment to Ms. Wilkinson on the alimony arrears, notwithstanding the trial court's failure to hold Dr. Wilkinson in contempt.

Having determined that the award of alimony arrears was proper regardless of whether a finding of contempt was made, we turn to address Ms. Wilkinson's argument that the trial court erred in its failure to grant partial summary judgment on Dr. Wilkinson's failure to pay transitional alimony. We glean from the record that the court did not grant summary judgment on the issue because of the existence of a dispute of fact concerning whether Ms.

-9-

Wilkinson and Ms. Morgan were cohabitating. It is well settled that, "when the trial court's denial of a motion for summary judgment is predicated upon the existence of a genuine issue as to a material fact, the overruling of that motion is not reviewable on appeal when subsequently there has been a judgment rendered after a trial on the merits." *Arrow Electronics v. Adecco Employment Servs., Inc.*, 195 S.W.3d 646, 650 (Tenn. Ct. App. 2005). Because this case proceeded to hearing on the merits after the denial of partial summary judgment, we are unable review the question of whether Ms. Wilkinson was entitled to partial summary judgment.

Finally, Ms. Wilkinson argues that the trial court erred in failing to find Dr. Wilkinson in contempt when the evidence showed that Dr. Wilkinson willfully failed to pay the amounts owed despite being financially able to do so. A trial court's decision to hold a person in civil contempt is reviewed under an abuse of discretion standard. See *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912 (Tenn. 1964); *Hawk v.. Hawk*, 855 S.W.2d 573, 583 (Tenn.1993); *Moody v. Hutchison*, 159 S.W.3d 15, 25–26 (Tenn. Ct. App.2003). The practical effect of this standard is that the discretionary decision will be reviewed to determine: (1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives. *Flowers v. Tennessee Trucking Association Self Insurance Group Trust*, 209 S.W.3d 602, 610 (Tenn. Ct. App. 2006). "An abuse of discretion is found when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id.* This review-constraining standard does not permit reviewing courts to substitute their own judgment for that of the court whose decision is being reviewed. *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

According to the Tennessee Supreme Court, civil contempt claims based upon alleged disobedience to a court order have four essential elements:

> First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 354–55 (Tenn. 2008) (footnotes omitted). The trial court specifically relied on the second requirement—"that the order alleged to be violated must be clear"—to decline to hold Dr.

-10-

Wilkinson in civil contempt for suspending the alimony payments. In ruling on the issue, the trial court stated on the record, as incorporated by reference into his order, that: "[B]ecause that provision in the MDA was somewhat ambiguous, [Dr. Wilkinson], though he was legally wrong in failing to pay, ostensibly had some reasonable bases for failing to pay." In addition, the trial found that although Dr. Wilkinson was "legally wrong in failing to pay," Dr. Wilkinson had some "reasonable basis" for failing to pay the alimony, including the investigator's report, advice of counsel, and Ms. Wilkinson's apparent thirty-two month delay in seeking to enforce the alimony provision. Based on these findings, we cannot conclude that the trial court in this case abused its discretion in concluding that the MDA was not sufficiently clear to support a finding of civil contempt. Accordingly, we also decline to conclude that the trial court abused its discretion in failing to hold Dr. Wilkinson in contempt for suspending the alimony payments.

### III.  Attorney Fees

As set out in full context above, the MDA, as incorporated into the amended divorce decree, provides that: "Should either party incur any expense[s] or legal fees in a successful effort to enforce this marital dissolution agreement, in whole or in part, the Court **shall** award reasonable attorney's fees and suit expenses to the party seeking to enforce this agreement." In the instant case, the court awarded Ms. Wilkinson $11,285.50 in attorney's fees.  Dr. Wilkinson appeals the award of attorney's fees. Ms. Wilkinson appeals the amount of the award, claiming that she is entitled to an award of $38,793 in attorney's fees.

As discussed in *Beem v. Beem*, No. W2009-00800-COA-R3-CV, 2010 WL 1687782 (Tenn. Ct. App. April 28, 2010):

> The issue of whether the attorney fee award was within the scope of the relevant provision in the MDA is an issue of law, which we review *de novo* on the record, affording no presumption of correctness to the trial court's decision. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006); *Frizzell Constr. Co. v. Gatlinburg, LLC*, 9 S.W.3d 79, 85 (Tenn. 1999). If an award of attorney fees is provided for in the MDA, the trial court has the discretion to determine whether the amount of the fee requested is reasonable. *See Airline Constr. Inc. v. Barr*, 807 S.W.2d 247, 270 (Tenn. Ct. App. 1990). Therefore, if an attorney fee award was proper under the parties' MDA, we must determine whether the trial court abused its discretion in the amount of the fee awarded. *See Metro. Gov't of Nashville v. Brown*, No. M2008-02495-COA-R3-CV, 2009 WL 5178418, at

*8 (Tenn. Ct. App. Dec.30, 2009).

*Id*. at *9.

In *Beem*, as in the instant case, the parties' MDA stated that the prevailing party "shall" be awarded his or her attorney's fees. As noted by the *Beem* Court:

> The "cardinal rule" of contract construction is to ascertain the intent of the parties and to effectuate that intent consistent with applicable legal principles. *Frizzell Constr. Co. v. Gatlinburg, LLC*, 9 S.W.3d 79, 85 (Tenn. 1999). When the language of the contract is plain and unambiguous, courts determine the intent of the parties from the four corners of the contract, interpreting and enforcing it as written. *Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000).

*Beem*, 2010 WL 1687782 at *10. Because the parties' MDA is clear that the prevailing party "shall" receive some amount of attorney's fees, the trial court did not err in awarding attorney fees to Ms. Wilkinson. The question, then, is whether the amount of the award was an abuse of the trial court's discretion. The issue of reasonableness of attorney's fees was recently addressed by this Court in *Pounders v. Pounders*, No. W2010–01510–COA–R3–CV, 2011 WL 3849493 (Tenn. Ct. App. Aug. 31, 2011):

> Our Supreme Court recently summarized the standard of review applicable to a trial court's decision regarding a reasonable attorney's fee as follows:
>
>> The trial court's determination of a reasonable attorney's fee is "a subjective judgment based on evidence and the experience of the trier of facts," *United Med. Corp. of Tenn., Inc. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d 133, 137 (Tenn. 1986), and Tennessee has "no fixed mathematical rule" for determining what a reasonable fee is. *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002). Accordingly, a determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. *Kline v. Eyrich*, 69 S.W.3d 197, 203 (Tenn.

2002); ***Shamblin v. Sylvester***, 304 S.W.3d 320, 331 (Tenn. Ct. App. 2009). We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 335 (Tenn.2010); ***Keisling v. Keisling***, 196 S.W.3d 703, 726 (Tenn.Ct.App.2005). The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, ***Williams v.. Baptist Mem'l Hosp.***, 193 S.W.3d 545, 551 (Tenn. 2006); ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 927 (Tenn. 1998), and we will find an abuse of discretion only if the court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." ***Konvalinka v. Chattanooga–Hamilton Cnty. Hosp. Auth.***, 249 S.W.3d 346, 358 (Tenn. 2008); *see also* **Lee Med., Inc. v. Beecher**, 312 S.W.3d 515, 524 (Tenn. 2010).

***Wright ex rel. Wright v. Wright***, No. M2008–01181–SC–R11–CV, ——S.W.3d ——, 2011 WL 1136245, at \*7 (Tenn. Mar. 29, 2011). "Unless it 'affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining,' the trial court's exercise of discretion will not be reversed on appeal." ***Pace v. Pace***, No. M2009–01037–COA–R3–CV, 2010 WL 1687740, at \*12 (Tenn. Ct. App. W.S. Apr. 26, 2010) (quoting ***Marcus v. Marcus***, 993 S.W.2d 596, 601 (Tenn.1999)).

***Pounders***, 2011 WL 3849493 at \*3.

Turning to the record, the trial court made specific findings from the bench concerning its award of attorney's fees and the amount thereof:

> Now we get to the issue of attorney fees. The Court has reviewed the attorney fee application by the Petitioner, as well

-13-

as the Response from the Respondent. Now, this Court is going to award attorney fees based upon this Petition for Contempt that was—based upon the work that was done and successfully pursued as to this alimony and tax liability issue. And when I say successfully pursued, there were some filings, such as the motion for summary judgment and all the work attendant to that, which the Court denied. So this Court is going to discount those fees.

I think there was also a petition for protective order, which the Court denied as well, and the Court is going to deny those attorney fees of the Petitioner.

Now, looking at and going over very closely the work that was done on the case as it relates to the past-due alimony payments, this Court is going to award an attorney fee in the amount of $11,285.50 as it relates to the successful pursuit of past-due alimony payments, as well as the court costs will be assessed against the Respondent.

In this case, it is clear that the court limited the award of attorney's fees to those portions of the litigation in which Ms. Wilkinson prevailed. As set out in full context above, the MDA provides for an award of "reasonable attorney's fees." It does not provide for an award of all attorney's fees. In addition the MDA contemplates that the fees and expenses will be awarded to the party for his or her "successful effort to enforce this marital dissolution agreement." Based upon the plain and unambiguous language of the MDA, we cannot conclude that the court abused its discretion in limiting the amount of attorney's fees only to those amounts accrued in the portions of Ms. Wilkinson's case on which she was actually successful, i.e. the petition for contempt. Moreover, a review of the affidavits filed in support of Ms. Wilkinson's request for attorney's fees are itemized and, therefore, the portion of fees attributable to the contempt petition is easily ascertainable.

In his brief, Dr. Wilkinson contends that an award of attorney's fees is erroneous in the absence of a finding that he was in contempt of court. Respectfully, we disagree. As discussed above, the MDA does not predicate the award of attorney's fees upon a finding of contempt; rather, it predicates the award upon a successful effort to enforce the MDA. Accordingly, we cannot conclude that, in order to award attorney's fees, the court also had to make a finding of contempt. That is simply not what the plain language of the MDA contemplates.

In her brief, Ms. Wilkinson argues that the trial court should also have allowed the fees allegedly accrued in pursuit of her motion for partial summary judgment. As noted

above, we do not reach the question of whether summary judgment should have been granted as we have determined that the case was adjudicated by a hearing on the merits. Because we are precluded from addressing the question of whether the denial of summary judgment was proper, Ms. Wilkinson's motion for partial summary judgment remains an unsuccessful attempt to enforce the MDA. As the MDA in this case specifically requires that attorneys fees be awarded for only "successful effort[s] to enforce [the MDA]," we cannot conclude that the trial court abused its discretion in failing to award Ms. Wilkinson her attorney fees for her unsuccessful attempt to obtain summary judgment.

Ms. Wilkinson asks this Court to award her attorney's fees accrued in defense of this appeal. An award of appellate attorney fees is within this Court's sound discretion. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). In determining whether to award attorney's fees on appeal, we consider the ability of the party seeking the fee award to pay such fees, success on appeal, whether the appeal was taken in good faith, and any relevant equitable factors. *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005); *see* Tenn. Code Ann. § 36–5–103(c); *see also* *Bryant v. Bryant*, No. M2007–02386–COA–R3–CV, 2008 WL 4254364, at *9–10 (Tenn. Ct. App. Sept. 16, 2008). Ms. Wilkinson is the prevailing party in this appeal. Based upon the plain language of the MDA, as incorporated into the trial court's order, Ms. Wilkinson, as the prevailing party, is entitled to her reasonable attorney's fees in defense of this appeal. Accordingly, we remand the case for a determination of the proper amount of those fees.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion, including, but not limited to, the determination of Ms. Wilkinson's reasonable attorney's fees accrued in this appeal. Costs of the appeal are assessed against the Appellant, Bradley Webb Wilkinson, and his surety.

_____
J. STEVEN STAFFORD, JUDGE